**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**CARSON REAL ESTATE COMPANIES,**

          **Plaintiff,**                **CIVIL ACTION NO. 10-CV-13966**

    **vs.**

                              **DISTRICT JUDGE MARK A. GOLDSMITH**

**COSTAR GROUP INC., COSTAR**      **MAGISTRATE JUDGE MONA K. MAJZOUB**
**REALTY INFO, INC., and**
**MICHAEL WEINSTEIN,**

          **Defendants.**
_____/

**I.**    <u>**RECOMMENDATION:**</u>  This Court recommends that the Motion to Remand filed by

Plaintiff (docket no. 6) be **DENIED** and the Motion to Dismiss filed by Defendants (docket no. 15)

be **GRANTED**.  In accordance with this recommendation, Counts II-IV of Plaintiff's complaint

should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

        The Court further recommends that the Motion to Transfer Venue filed by Defendants

(docket no. 2) be **GRANTED** and Count I of Plaintiff's complaint be transferred to the United States

District Court for the District of Maryland.

**II.**    <u>**REPORT:**</u>

        These matters come before the Court on three motions.  The first motion is Defendants'

CoStar Group, Inc., CoStar Realty Information, Inc., and Michael Weinstein's Motion to Transfer

Venue. (Docket no. 2).  Plaintiff Carson Real Estate Companies ("CRE") filed a response.  (Docket

no. 8).  Defendants filed a reply.  (Docket no. 14).  The second motion is Plaintiff CRE's Motion

for Remand to the Oakland County Circuit Court.  (Docket no. 6).  Defendants filed a response.

(Docket no. 16).  Plaintiff filed a reply.  (Docket no. 17).  The third motion is Defendants' Motion

to Dismiss.  (Docket no. 15).  Plaintiff filed a response.  (Docket no. 19).  Defendants filed a reply.

(Docket no. 20).  The motions have been referred to the undersigned for recommendation pursuant

to 28 U.S.C. § 636(b)(1)(B).  (Docket no. 21, 34).  The Court heard oral argument on the Motion

to Remand and Motion to Transfer Venue on June 13, 2011.  The Motion to Dismiss being fully

briefed, the Court dispenses with oral argument on that motion pursuant to E.D. Mich. LR 7.1(f).

The motions are now ready for ruling.

**A.      Facts and Procedural History**

CoStar Realty Information, Inc. and CoStar Group (collectively, "CoStar") is a national

commercial real estate information services provider incorporated in Delaware with offices in

Oakland County, Michigan.  (Docket no. 1).  CoStar owns and operates a database containing

photographs, building information, and analyses of commercial real estate properties across the

country.   CoStar's Internet-based services are generally accessible only to authorized users.

Individuals and businesses wishing to access CoStar's database are required to enter into a written

license agreement and subscribe to one or more of CoStar's services.  The license agreement limits

the number of authorized users on each account.  Once a party executes a license agreement, CoStar

provides each authorized user with a user identification and password for access to its subscription

information services within the terms of the user's specific license.

On August 27, 2010 CoStar Realty Information, Inc. ("CoStar Realty") filed a complaint

against Carson Equities, f/k/a Carson Real Estate Company, in the United States District Court for

the District of Maryland.  (Docket no. 2, ex. A).  The complaint raises claims of breach of contract,

fraud, and copyright infringement based on the defendant's alleged unauthorized access of one or

2

more of CoStar's accounts.

According to the Maryland complaint and the parties' oral arguments during the hearing on these motions, Carson Equities approached Friedman Real Estate Group ("Friedman"), a current CoStar customer, to induce Friedman to have CoStar issue a user name and password to Jason Tink, a joint employee of Friedman and CRE.  Friedman shares an ownership interest with CRE in Premier Communities, LLC, a Michigan limited liability company formed for the purpose of allowing Friedman and CRE to each separately or jointly develop business opportunities.  (Docket no. 6).  The complaint alleges that Carson Equities enticed Friedman to provide Jason Tink's user name and password to individuals at Carson Equities, who then used the user name and password to improperly access and use CoStar's commercial real estate information subscription services for Carson Equities' commercial purposes.  (Docket no. 2, ex. A).  Defendant is claimed to have accessed CoStar's accounts without acquiring a valid license from CoStar.

The Maryland complaint alleges that when Carson Equities accessed CoStar's website it agreed to be bound by the Terms of Use agreement of the website.  (Docket no. 2, ex. A).  According to the complaint, Carson Equities breached the Terms of Use agreement by accessing and using the CoStar databases without authorization from CoStar.  The complaint further alleges *inter alia* that Carson Equities reproduced, distributed, or displayed CoStar's copyrighted material and made unauthorized copies and displays of CoStar's copyrighted databases and photographs.  (Docket no. 2, ex. A).  On October 15, 2010 CoStar Realty amended its complaint to add CRE as a defendant.

On September 10, 2010 CRE filed a complaint against CoStar Group, Inc., CoStar Realty Information, Inc., and Michael Weinstein in the Oakland County Circuit Court.  (Docket no. 1, ex.

3

A). Defendants removed the complaint to this Court on October 5, 2010. The complaint alleges that Friedman entered into license agreements with CoStar Realty in 2005 and 2009. Defendant Weinstein, a CoStar employee, allegedly participated in the negotiation and execution of the 2005 license agreement with Friedman. The facts underlying the Michigan complaint indicate that Friedman requested that CoStar issue a password to Jason Tink, who then allegedly accessed CoStar's database on Friedman's behalf out of his CRE office. The complaint states that CoStar representatives, including Defendant Weinstein, accused CRE of unlawfully accessing CoStar databases from 2007 to 2009 "and began threatening to take action against CRE if it would not agree to sign a license agreement with CoStar and pay over $75,000 to CoStar." (Docket no. 1, ex. A).

Count I of the Michigan complaint seeks a declaration that Jason Tink's use of the information on the CoStar database and CoStar website did not violate the terms of the 2005 or 2009 license agreements. (Docket no. 1, ex. A, ¶ 52(B)). Plaintiff also seeks a declaration that CRE did not obtain or use information on the CoStar database or website or otherwise take any action that would interfere with any rights or property interests of CoStar. (Docket no. 1, ex. A, ¶ 52(B), (C)). Count II seeks damages resulting from Defendants' threats to pursue civil and criminal penalties against CRE unless CRE paid CoStar over $75,000 for a license agreement. Count III alleges that Defendants conspired with one another for the illegal purpose of engaging in unlawful business practices and conspired to threaten CRE with civil and criminal prosecution with the intent to obtain money or pecuniary advantage for Defendants. Count IV alleges that Defendants engaged in concerted activities.

On May 9, 2011 the Honorable Alexander Williams, Jr. of the United States District Court for the District of Maryland denied motions to dismiss filed by Carson Equities and CRE in the

Maryland action. (Docket no. 32). Judge Williams found that the Maryland case was the first case filed and denied the motions to dismiss. Carson Equities and CRE were ordered to file an answer to the Maryland complaint within ten days of the May 9, 2011 order. The parties are proceeding with discovery.

In the instant case, Defendants move to dismiss Plaintiff's state law claims and transfer venue over Plaintiff's declaratory judgment action to Maryland. Plaintiff moves to remand this action to the Oakland County Circuit Court.

**B.      Standard**

28 U.S.C. § 1441(a) provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant" to the federal district court embracing the place where the action is pending. "[D]istrict Courts have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Under 28 U.S.C. § 1338(a), federal district courts "have original jurisdiction of any civil action arising under any Act of Congress relating to ... copyrights." 17 U.S.C. § 301 also vests federal courts with exclusive authority over any claim within the subject matter of copyright. Pursuant to § 301, "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright ... are governed exclusively by" the Copyright Act, and "no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State." 17 U.S.C. § 301(a). Under the doctrine of complete preemption, state law claims may be recharacterized as federal claims so that removal is proper, even though the complaint may not specifically identify a federal basis of jurisdiction. *Ritchie v. Williams*, 395 F.3d 283, 286 (6th Cir.2005) (citations omitted).

5

The diversity statute, 28 U.S.C. § 1332, provides that district courts have original jurisdiction over all matters involving citizens of different states where the amount in controversy exceeds $75,000 exclusive of costs and interest. Removal statutes are strictly construed with all doubts resolved in favor of remand. *See Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 534 (6th Cir.1999).

When determining a motion under Rule 12(b)(6), the court must construe the complaint in a light most favorable to the plaintiff, accept all well-pled factual allegations as true, and determine whether the plaintiff's allegations present plausible claims. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555-56 (2007). To survive a Rule 12(b)(6) motion to dismiss "the complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Bishop v. Lucent Tech., Inc.*, 520 F.3d 516, 519 (6th Cir.2008) (citation and internal quotation marks omitted). A complaint containing a statement of facts that merely creates a suspicion of a legally cognizable claim can not survive a Rule 12(b)(6) motion. *Id.* The complaint's " '[f]actual allegations must be enough to raise a right to relief above the speculative level;' they must 'state a claim to relief that is plausible on its face.' " *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555, 570 (2007)).

28 U.S.C. § 1404(a) governs transfer of a case and provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). District courts have broad discretion to determine when a transfer of venue is appropriate. *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir.2009).

**C.      Analysis**

6

1.      **Plaintiff's Motion to Remand**

Plaintiff moves for remand of this case to the Oakland County Circuit Court pursuant to 28 U.S.C. § 1447(c) on the basis that the claims in its complaint are grounded in state law and are not preempted by the federal Copyright Act.  Defendants argue that Plaintiff's request for declaratory relief is completely preempted by the federal Copyright Act because it seeks a determination that Plaintiff has not interfered with CoStar's copyright interests.  As previously noted, Count I of Plaintiff's complaint seeks among other things a declaration that CRE did not obtain or use information on the CoStar database or CoStar website or otherwise take any action that would interfere with any rights or property interests of CoStar.  (Docket no. 1, ex. A ¶¶ 52(C)).  Defendants contend that the rights and property interests referenced by CoStar in its request for declaratory relief are copyright interests.

A state-law claim is preempted under § 301 of the Copyright Act if (i) the work at issue falls within the scope of the subject matter of copyright, and (ii) the rights granted under state law are equivalent to any of the exclusive rights conferred under the Copyright Act.  *Stromback v. New Line Cinema*, 384 F.3d 283, 300 (6th Cir.2004) (citing *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir.2001)).  The first requirement of § 301 preemption is referred to as the subject matter requirement.  *Stromback*, 384 F.3d at 300.  "The subject matter requirement of § 301 is satisfied if a work fits within the general subject matter of Sections 102 and 103 of the Copyright Act, regardless of whether it qualifies for copyright protection."  *Id*. (citation omitted).  Defendants contend that CoStar owns valid copyrights in the data and other materials on CoStar's website and database.  Plaintiff seeks a declaration that it did not violate any of Defendants' rights or interests in these materials.  The Court is satisfied that the first element of § 301 preemption is met.

The second and more difficult step in the preemption analysis requires the Court to determine whether Plaintiff's request for declaratory relief is equivalent to a federal copyright claim. *Id*. "Courts analyze equivalency by applying 'a functional test' to determine whether the state law right at issue is equivalent to any of the exclusive rights under Section 106 of the Copyright Act." *Id*. at 301 (citation omitted). In doing so courts determine whether the state law claim requires proof of an extra element not found in the copyright dispute, i.e. an element beyond acts of reproduction, performance, distribution, or display. *Wrench*, 256 F.3d at 456. A state law that requires proof of an extra element is considered qualitatively different from a federal copyright claim and is not preempted. *Id*. "The existence of an extra element precludes preemption only where the element changes the nature, rather than the scope, of the action." *Stromback*, 384 F.3d at 301 (citation omitted).

Plaintiff contends that the promise to pay contained in the license agreements constitutes the "extra element" needed to survive § 301 preemption. A state law contract claim may survive preemption if the claim requires a showing that the defendant breached the promise to pay. *Wrench*, 256 F.3d at 456 (it was "not the use of the work alone but the failure to pay for it that violates the contract and gives rise to the right to recover damages.").

Plaintiff argues that its complaint merely seeks a declaration that its use complied with the 2005 and 2009 license agreements between CoStar and Friedman. While this is certainly one component of Plaintiff's declaratory action, Plaintiff's request is actually much broader in scope. As previously noted, Plaintiff seeks a declaration that it has not taken *any action* or used CoStar's data in *any way* that violates *any of CoStar's rights or interests*. This request goes beyond a mere

interpretation of the license agreements.  In fact it is difficult to conceive how this request does not seek a determination that Plaintiff did not violate CoStar's copyright interests.

The Court should find that Plaintiff's request for declaratory relief satisfies the equivalency prong for § 301 preemption. Plaintiff's claim for declaratory relief may be recharacterized as a copyright claim and the Court should find that Plaintiff's case was properly removed on the basis of federal question jurisdiction.  Because the Court has federal question jurisdiction, it should decline to reach the issues raised by the parties pertaining to diversity jurisdiction.  Finally, given the above conclusion, the Court should accept supplemental jurisdiction over the remainder of Plaintiff's claims, which do not meet the § 301 preemption requirements.

**2.      Defendants' Motion to Dismiss**

Next, Defendants move to dismiss the state law claims in Counts II-IV of Plaintiff's complaint.  As previously discussed Count II of Plaintiff's complaint alleges that Defendants engaged in unlawful business competition by threatening to take civil and criminal action against Plaintiff with the intent to obtain money or pecuniary advantage for Defendants, Count III alleges that Defendants unlawfully conspired with one another for the purpose of engaging in unlawful business practices and threatening it with civil and criminal prosecution with the intent to obtain money or pecuniary advantage for the Defendants, and Count IV of Plaintiff's complaint alleges that Defendants engaged in concerted activities.

Michigan law holds that a "civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Admiral Ins. Co. v. Columbia Cas. Ins. Co.*, 486 N.W.2d 351, 358 (Mich. Ct. App. 1992) (citations omitted).  In order to establish a civil conspiracy, "it is

necessary to prove a separate, actionable tort." *Early Detection Ctr., P.C. v. New York Life Ins. Co.*, 403 N.W.2d 830, 836 (Mich. Ct. App. 1986) (citation omitted). Similarly, "[c]oncert of action is itself a claim which, like conspiracy, cannot exist independently of an underlying tortious act." *Cousineau v. Ford Motor Co.*, 363 N.W.2d 721, 731 (Mich. Ct. App. 1985).

At the hearing on the motion to remand and motion to transfer venue Plaintiff argued that its state law claims are premised on the underlying torts of extortion and unfair competition. Michigan recognizes unfair competition claims. *Clairol, Inc. v. Boston Discount Center of Berkley, Inc.*, 608 F.2d 1114, 1118-21 (6th Cir.1979). However, in order to prevail on an unfair competition claim, Plaintiff must allege and prove that it is in competition with Defendants. *Veteran Med. Prods., Inc. v. Bionix Dev. Corp.*, No. 1:05-CV-655, 2009 WL 891724, at *9 (W.D. Mich. March 31, 2009) ("[I]n order to prove unfair competition there must be actual competition shown from specific instances or as a natural tendency of defendant's act .... [O]ne simply cannot be found guilty of unfair competition when the facts indicate no competition."). Plaintiff has not alleged facts in its complaint to show that it was in competition with Defendants. Accordingly, Plaintiff has failed to state plausible claims for relief based on a theory of unfair competition.

Plaintiff also argues that Counts II-IV are premised upon theories of extortion. Michigan law recognizes a private right of action for extortion. *See Jersevic v. Kuhl*, No. 238808, 2003 WL 1558207, at *1 (Mich. Ct. App. March 25, 2003). Additionally, the Michigan Court of Appeals has found that a party may recover for unlawful and malicious threats where the thing threatened is unlawful and the making of the threat is also unlawful. *Id*. Plaintiff has alleged that Defendants threatened to take civil and criminal action against it if Plaintiff did not sign a license agreement and pay Defendants $75,000 for its services. Courts have concluded that similar threats do not give rise

10

to a legally cognizable claim for extortion.  *See Various Markets, Inc. v. Chase Manhattan Bank, N.A.*, 908 F.Supp. 459, 468 (E.D. Mich. 1995); *Advocacy Org. for Patients and Providers v. Auto Club Ins. Ass'n.*, 176 F.3d 315, 325-28 (6th Cir.1999).  This Court agrees.  Since Plaintiff has failed to plead facts to support the underlying torts of extortion and unfair competition, its conspiracy and concerted action claims in Counts III and IV, and its claim under Count II of its complaint must be dismissed.

The parties have spent considerable time arguing over whether the intra-corporate conspiracy doctrine set forth in *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984), and the Noerr-Pennington doctrine apply to this case.  Because the Court finds that Plaintiff's factual allegations fail to support its claims for relief in Counts II-IV of its complaint, the Court declines to address the applicability of the Noerr-Pennington doctrine and the *Copperweld* rule to this case.

**3.     Defendants' Motion to Transfer Venue**

Next, Defendants move to transfer venue to the United States District Court for the District of Maryland pursuant to 28 U.S.C. § 1404(a).  Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  District courts have broad discretion to determine when a transfer of venue is appropriate.  *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir.2009).

28 U.S.C. § 1391(b) provides that an action may be brought in any district where a substantial part of property that is the subject of the action is situated.  Defendants contend that CoStar's headquarters as well as the documentary evidence that supports CoStar's case are located in Maryland.  Thus, the Court should find that Plaintiff's case could have been brought in Maryland.

11

Courts consider the following factors in deciding a section 1404(a) motion: (1) the convenience of the parties and witnesses; (2) the accessibility of evidence; (3) the availability of process to compel attendance of unwilling witnesses; (4) the cost of obtaining willing witnesses; (5) the practical problems of trying the case most expeditiously and inexpensively; and (6) the interests of justice. *Id.* at 320; *Moses v. Bus. Card Express, Inc.,* 929 F.2d 1131, 1137 (6th Cir.1991) (in considering a motion to change venue under § 1404(a), "a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.' "). While Plaintiff's choice of forum should generally be granted deference, "it is undisputed that [c]ourts will not blindly prefer the plaintiff's choice of forum" over a more appropriate location. *Danuloff v. Color Ctr.,* No. 93-CV-73478, 1993 WL 738578, at *3 (E.D.Mich. Nov. 22, 1993) (citation and internal quotation marks omitted).

Defendants contend that this action should be transferred because the Maryland lawsuit was the first action filed. The first-to-file rule provides that "when actions involving nearly identical parties and issues have been filed in two different district courts, the court in which the first suit was filed should generally proceed to judgment." *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.* 511 F.3d 535, 551 (6th Cir.2007) (citations and internal quotation marks omitted). The purpose of the rule is to encourage "comity among federal courts of equal rank." *Id.* The first-filed rule is not strictly applied and may be dispensed with where equity so requires. *Id.* Rare or extraordinary circumstances, inequitable conduct, bad faith, anticipatory suits, or forum shopping weigh against application of the rule. *See Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 628 (9th Cir.1991). Transfer of venue and the first-to-file rule are separate issues which must be

12

analyzed separately. *Zimmer Enter., Inc. v. Atlandia Imports, Inc.*, 478 F.Supp.2d 983, 989 (S.D. Ohio 2007) ("The first-filed rule does not supersede the inquiry into the balance of convenience under § 1404(a) and a transfer justified under § 1404(a) [may be] proper even if the action to be transferred was filed before a related action was filed in the transferee district." (citation omitted)).

Defendants contend that CoStar's lead counsel, principal witnesses, corporate headquarters, and documentary evidence that supports their case are located within the District of Maryland. They also contend that Plaintiff agreed to CoStar's Terms of Use when it unlawfully gained access to CoStar's Internet-based services, and those Terms of Use dictate that any claims against CoStar be litigated in the state and federal courts of Maryland. Plaintiff contends that non-party witnesses Jason Tink, Friedman Real Estate Group, and Friedman's employees are Michigan residents and that transferring the case to Maryland would result in a great hardship to these witnesses. In addition, Plaintiff contends that the case involves application of Michigan law which should be adjudicated in a Michigan court.

During the hearing on this motion Plaintiff stated that the cases in Michigan and Maryland may require similar proofs and witnesses but different causes of action. The United States District Court for the District of Maryland has determined that the Maryland case was first-filed and has denied CRE's motion to dismiss. That action is in the discovery stage. The fact that Plaintiff is involved in active litigation in Maryland involving similar facts, proofs, and witnesses raises issues of judicial economy, witness convenience, and federal comity that militate strongly in favor of transfer under 28 U.S.C. § 1404(a). Having considered all of the factors, this Court recommends that Defendants' Motion to Transfer Venue be granted and Count I of Plaintiff's complaint be transferred to the District of Maryland.

13

III.    **NOTICE TO PARTIES REGARDING OBJECTIONS**:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.  Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.


Dated: June 30, 20110          s/ Mona K. Majzoub
                               MONA K. MAJZOUB
                               UNITED STATES MAGISTRATE JUDGE

14

**<u>PROOF OF SERVICE</u>**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.


Dated: June 30, 2011                    <u>s/ Lisa C. Bartlett</u>
                                        Case Manager